**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01035-RM-NYW

REYNALDO SUAVERDEZ, on behalf of
himself and all similarly situated persons

Plaintiff,

v.

CIRCLE K STORES INC.

Defendant.

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.    INTRODUCTION**

With the help of Todd McNamara as a mediator, the Plaintiff Reynaldo Suaverdez and Defendant Circle K Stores Inc. (the "Parties") have reached a class-wide settlement for $3,500,000.00 for Plaintiff's claims that he and the class he alleges were not compensated for missed meal and rest breaks under the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.*, and the Colorado Minimum Wage Act, C.R.S. §§ 8-4-101, *et seq. See generally* Ex. 1, Executed Settlement Agreement (the "Settlement Agreement"); Ex. 2, Proposed Notice; Ex. 3, Dec. of Mediator Todd McNamara. The Settlement is the result of over a year of litigation, which included significant formal and informal discovery and a full-day mediation before an experienced mediator. The proposed Settlement meets all the criteria for preliminary approval pursuant to Rule 23(e)(1), *i.e.*, the proposed Settlement is within the range of reasonableness and warrants notifying the class and setting a final approval hearing. *See Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). The Settlement should be preliminarily approved pursuant to Rule 23(e)(1), and the

proposed notice should be served on the class consistent with the terms of the Settlement.

## II. THE SETTLEMENT

As part of the Settlement, and for the purposes of settlement only, the Parties have agreed to the certification of the following Rule 23 class:

> ALL INDIVIDUALS WHO WORKED FOR CIRCLE K STORES, INC. AS HOURLY EMPLOYEES IN ITS CONVENIENCE STORES IN COLORADO FROM MARCH 15, 2017 THROUGH MARCH 15, 2020

Ex. 1, Settlement at ¶ II.A (defining "Settlement Class").

The Settlement provides that Defendant shall pay $3,500,000.00 in full and final settlement of this dispute for Plaintiff and the settlement class. *Id.* at ¶ IV.E.1. The Settlement is non-reversionary, is not a "claims made" settlement, requires mailing of payments to all members of the class who do not exclude themselves, and pays reversionary funds to the Legal Aid Foundation of Colorado only after two distributions to the class. *Id*. All required payments will be made from the $3,500,000.00, including all payments to settlement class members, attorney's fees, litigation expenses, settlement administration costs, employer portion of payroll taxes, and any service award. *Id.* at ¶¶ IV.E.1 and IV.E.8.d. This settlement amount is in consideration for a waiver and release by the Settlement Class of all claims that were brought, or could have been brought, based on the allegations of missed meal and rest breaks in the operative complaint. *Id.* ¶ IV.D.1.

Plaintiffs' Counsel has agreed to seek no more than 1/3 of the total settlement amount in attorney's fees. *Id.* at ¶ IV.E.2.a.[1] Subject to Court approval, Plaintiffs' Counsel is separately entitled to their "actual and documented reasonable expenses." *Id.* Also subject to Court approval, the Settlement provides for Plaintiff to receive a service award of $30,000.00 for his efforts made and risks undertaken in pursuing this case. Ex. 1 at ¶ IV.E.3.

---

[1] Plaintiffs' Counsel will move for their fees and costs separately prior to final approval.

The amount allocated to settlement payments to the settlement class will be distributed on a "pro rata basis based on the total amount of workweeks, average hours worked per week, and average hourly rate of pay within the Release Period." *Id.* at ¶ IV.E.7.a. "If the Court requires a different allocation in order to approve [the Settlement], Class Counsel is authorized to propose and/or accept a different allocation in order to obtain Court approval." *Id.* The settlement payments will be allocated 50 percent to wages and 50 percent to penalties/interest. *Id.* at ¶ IV.E.7.c.

The settlement administrator will mail a notice of preliminary approval, attached as Exhibit 2 to the Settlement and Exhibit 2 to this Motion, to each settlement class member within twenty-one days after the Court enters an order preliminarily approving the Settlement. *Id.* at ¶ IV.C.3. Settlement class members will have forty-five days after mailing of the notice to opt out of the Settlement or file objections and are also provided an opportunity to appear at the final approval hearing to be set by the Court. *Id.* at ¶¶ IV.C.5-6. Settlement checks that cannot be delivered or are not cashed will be distributed by the settlement administrator to existing class members on the same pro rata basis used to determine initial payment amounts. *Id.* at ¶ IV.E.1. Any funds remaining from uncashed checks after the second distribution will be distributed to Legal Aid Foundation of Colorado as *cy pres*. *Id.*

### III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Pursuant to Fed. R. Civ. P. 23(e), court approval of a class action settlement takes place in a two-step process. The court first decides whether to give notice to the proposed class of the proposed settlement and second decides whether to approve the settlement. *See* Fed. R. Civ. P. 23(e)(1)-(2). This Motion asks the Court to undertake the first step of the analysis, *i.e.*, the Motion asks the Court to decide whether notice of the Settlement should be provided to the Settlement Class. *See* Fed. R. Civ. P. 23(e)(1).

For the Court to issue notice, the Parties must make a "showing that the court will likely

3

be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgyet on the proposal." *Id.* Thus, at the preliminary approval stage, the Court determines only whether there is "any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

A. **The Court is Likely to Certify the Class for the Purposes of Settlement Pursuant to Rule 23**

Taking the second Rule 23(e)(1) preliminary approval requirement first, the Court is likely to certify the class for purposes of settlement because the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3). This is particularly true given the lower standard for Rule 23 certification in the settlement context. Fed. R. Civ. P. 23(e)(1) advisory committee note to 2018 amendment (acknowledging the different standards in noting that "[a]lthough the standards for certification differ for settlement and litigation purposes"); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556–57 (9th Cir. 2019) (class certification concerns about "manageability at trial" do not exist in the settlement context).

   1.   **The Settlement Class is Likely to be Certified Pursuant to Rule 23(a)**

       a.   **Numerosity**

"A certifiable class must be so numerous that joinder is impracticable." *Helmer v. Goodyear Tire & Rubber Co.*, Civil Action 12-cv-00685-RBJ-MEH (D. Colo. Mar. 21, 2014). "Numerosity also requires that the members of the class be ascertainable with the use of objective criteria." *Id.* Here, based on Defendant's employment records, the Parties agree that the settlement class consists of over 6,000 individuals. A class of this size easily meets Rule 23's numerosity requirement. *See* Alba Conte, Herbert B. Newberg, & William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2011) (suggesting that a class of 40 or more members should presumptively satisfy numerosity); *see also DeCoteau v. Raemisch*, 13-cv-3399-WJM-KMT (D. Colo. July 10,

4

2014) (citing *Dale Elec., Inc. v. R.C.L. Elecs., Inc.*, 53 F.R.D. 531, 534-36 (D.N.H. 1971) (13 members found sufficient)).

### b.     Commonality

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194–95 (10th Cir. 2010). Here, the Parties agree that the settlement class satisfies commonality for settlement purposes. In particular, during the Release Period, Circle K did not have a written meal or rest break policy, and the questions of whether class members were denied paid rest breaks of at least 10 minutes and/or denied unpaid meal breaks of at least 30 minutes or permitted to consume an on-duty meal are common to the class. This Court certified another case regarding unpaid breaks under Colorado law that this Court as a Rule 23 class in similar circumstances. *Sobolewski v. Boselli & Sons, LLC*, 2018 WL 3838140, at *3 (D. Colo. June 13, 2018) (Moore, J.).

### c.     Typicality

To satisfy the typicality requirement of Fed. R. Civ. P. 23(a)(3), Plaintiff must show that his claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiff is an hourly employee of Defendant who alleges he, like other hourly employees in Defendant's stores, was not compensated for breaks required under Colorado law. The legal standards and requirements for proving the legal claims are the same for Plaintiff and all the putative class members. Thus, for settlement purposes, Plaintiff's claims are sufficiently typical of the putative class to satisfy Fed. R. Civ. P. 23(a)(3).

### d.     Adequacy

Finally, Rule 23(a) requires that the representative party fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel

5

have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

Neither Plaintiff nor his counsel have any interests antagonistic to those of the putative class members. Plaintiff could only recover if he succeeded on legal theories that would also lead to recovery for the class, and his attorneys can only be compensated if they successfully prosecute this suit. *See Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002). Plaintiff has communicated regularly with Plaintiffs' Counsel, and Plaintiff, through his counsel, has prosecuted this action vigorously on behalf of himself and the putative class. Finally, Plaintiffs' Counsel is uniquely qualified to prosecute this action based on their considerable experience as lead counsel in class action wage and hour litigation. *See generally* Exs. 4-6 (counsel declarations).

### e.   The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.

Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter. Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

#### i.   *Predominance*

Common questions clearly predominate. The primary remaining questions are common questions, *i.e.*, whether company-wide practices regarding meal and rest breaks during the Release Period violated Colorado law. *See supra* at 5. Further, Plaintiff alleges that the settlement class members would be entitled to the same legal remedies. Accordingly, class certification for settlement purposes to effectuate the Settlement Agreement is proper.

6

*ii. Superiority*

To the knowledge of Plaintiffs' Counsel, no other potential class member has filed any claim in any court or administrative proceeding for unpaid wages against the Defendant in the state of Colorado. Ex. 5, Hood Dec. ¶ 12; Ex. 4, Reynolds Dec. ¶ 12. Thus, no other potential class member has demonstrated an interest in controlling this litigation. *See* Fed. R. Civ. P. 23(b)(3)(A)–(B). Additionally, in the instant action, the members of the Settlement Class have the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

Furthermore, the District of Colorado is ideal for the concentration of this litigation because Defendant does business in this District, and the acts or omissions giving rise to the claims occurred in this District. *See id.* 23(b)(3)(C). The putative class action is unlikely to be difficult to manage because underlying it are Defendant's common practices regarding compensable worktime. *See id.* 23(b)(3)(D). Finally, the class action vehicle is the superior method for adjudicating this controversy because it involves small claims of low-wage workers, most of whom were paid low hourly wages. *See, e.g., Maez v. Springs Auto. Grp.,* LLC, 268 F.R.D. 391, 397 (D. Colo. 2010); *Cook v. Rockwell International Corp.,* 181 F.R.D. 473, 482 (D. Colo. 1998).

**2. The Court is Likely to Approve Plaintiffs' Counsel as Class Counsel Pursuant to Rule 23(g)**

Should the Court certify the class, it must appoint class counsel. Fed. R. Civ. Proc. 23(g). Plaintiffs' Counsel, Larkin Reynolds, Alexander Hood, and Brian Gonzales, request appointment as class counsel. *See generally* Exs. 4-6, Counsel Decs. Mr. Suaverdez originally retained Attorney Reynolds in the context of an eviction proceeding pending at the time in Arapahoe County Court. Case No. 2019C40736. Ex. 4, Reynolds Dec. ¶ 8. Recognizing the existence of disability discrimination and wage and hour claims, Attorney Reynolds helped Mr. Suaverdez pursue his discrimination claims and later recruited Attorneys Hood and Gonzales, who are experienced class

7

action litigators, to assist. *See* Ex. 5, Hood Dec. ¶¶ 2-10; Ex. 6, Gonzales Dec. ¶¶ 3-6. Proposed class counsel have spent significant time investigating, researching, and developing the laws and facts of this case. They have undertaken discovery and navigated a fact-intensive mediation.

Ms. Reynolds has extensive complex litigation experience. *See* Ex. 4, Reynolds Dec. ¶¶ 3-7. Messrs. Gonzales and Hood have extensive experience pursuing wage and hour class and collective actions in Colorado and nationwide. *See* Ex 5, Hood Dec. ¶¶ 2-10; Ex. 6, Gonzales Dec. ¶¶ 3-6. Finally, proposed class counsel have committed to advancing all costs of this litigation. *See* Ex. 5, Hood Dec. ¶ 6. Ms. Reynolds, Mr. Hood, and Mr. Gonzales should be appointed class counsel.

**B. <u>The Court is Likely to Approve the Settlement Pursuant to Rule 23(e)(2)</u>**

To preliminarily approve a class action settlement and distribute notice to the Settlement Class, the Court must also find that it "will likely be able to … approve the proposal under Rule 23(e)(2)." *See* Fed. R. Civ. P. 23(e)(1). Rule 23(e)(2) requires a finding that a proposed settlement "is fair, reasonable, and adequate." In the preliminary approval context, that requires a court to consider whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Motor Fuel Temp. Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (citation omitted).

    1.    **The Proposed Settlement Was Fairly and Honestly Negotiated**

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567-WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted); *see also In re Penthouse Executive Club Compensation Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. 2013) (granting

8

preliminary approval of proposed settlement reached through negotiations that involved formal mediation, finding that the proposed settlement is non-collusive, as a settlement "reached with the help of third-party neutrals [which] enjoys a 'presumption that the settlement achieved meets the requirements of due process'" (quoting *Johnson v. Brennan*, 2011 WL 4357376, at *8 (S.D.N.Y. 2011))). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson*, 171 F.R.D. at 283 (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel and engaged in formal and informal discovery regarding the merits of the claims and Defendant's defenses, and the settlement resulted from a mediation held before Todd McNamara, an experienced mediator. *See generally* Ex. 3, Dec. of Mediator Todd McNamara. Through formal and informal discovery, including Defendant providing voluminous payroll records for the Settlement Class in advance of mediation, each party gained ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel vigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

### 2. The Settlement is Non-Collusive

This case was hotly contested and litigated by the Parties. This lawsuit was originally filed on March 15, 2020. This dispute involves a bona fide dispute between adversarial parties. Settlement of this matter, as reflected in this motion and by the settlement agreement, was born of an adversarial process with all involved advocating for their clients. To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the

one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and unpredictable."). Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this factor also weighs in favor of approval of the Settlement.

### 3. Immediate Recovery Outweighs the Possibility of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015.

Here, Plaintiffs' Counsel retained a PhD statistician to build a damages model for mediation from payroll records provided for mediation. *See* Ex. 5, Hood Dec. ¶¶ 13-14. According to that model, the $3.5 million recovery represents compensation to the Settlement Class for missing 90% of available 10-minute rest periods and 10% of missed 30-minute meal periods. *See id*. In preparation for court approval, the proposed settlement administrator, *infra* at 15, also made preliminary class distribution calculations and reports the following estimates:

- The highest estimated individual settlement payment to Settlement Class Members is $3,507.30

- The average estimated individual settlement payment to be paid to Settlement Class Members is $348.33.

- The average recovery per workweek for Settlement Class Members is $6.89.

- The average number of workweeks worked by Settlement Class members during the Release Period is 51 workweeks.

10

- The average number of hours worked by Settlement Class members during the Class Period is 30.69 hours.

*See* Ex. 7, JND Dec. ¶¶ 12-14.

This is eminently fair given the undeveloped nature of the law relating to meal periods under Colorado law. Defendant made clear that its legal position was that no damages were available for missed meal periods because the meal breaks were not "practicable" under the applicable Colorado regulation and employees were permitted to consume an on-duty meal. Compensating for 90% of available 10-minute rest periods takes into account the practical reality that, at least occasionally, restroom or smoke breaks or a personal telephone call would last for 10 minutes or more. More generally, litigation risk—discovery, class certification, dispositive motions, and eventual trial on behalf of a class of over 6,000—made this significant recovery now outweigh the uncertainty of any future relief. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130-31 (D. Colo. 2016) ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial.").

### 4. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class

The Settlement requires the settlement fund be distributed to the class on a "pro rata basis based on the total amount of workweeks, average hours worked per week, and average hourly rate of pay within the Release Period." Ex. 1, Settlement at ¶ IV.E.7.a. This ensures that each class member receives a share of the settlement fund proportional to their work for Defendant and, thus, proportional to opportunities for missed rest and meal periods while working for Defendant.

The one twist that the Court no doubt noticed in reviewing the proposed Settlement and Notice is that the "Release Period," and thus the work weeks used to calculate class member distribution, extend prior to the class period. Specifically, the "'Release Period' means the period

of time that begins on the date that is exactly six years prior to the date that is 35 days after the fairness hearing held by the Court regarding this settlement, and ends on [March 15, 2020]." *See* Ex. 1, Settlement ¶ IV.D.1. Similarly, the Notice informs the Settlement Class that,

> [y]our individual payment amount is allocated on a pro rata basis based on the total number of workweeks worked multiplied by your average number of hours worked per week ("Qualifying Hours") as a non-exempt employee in a Colorado Circle K store between March 15, 2020 and the date that is six years prior to [INSERT date 35 days after Fairness Hearing], as well as your average hourly rate of pay.

*See* Ex. 2, Notice at 4.

This release and distribution language represents a negotiated compromise between the Parties that accounts for (1) the fact that Defendant only has detailed pay and contact information for employees for three years prior to the filing of the case, and (2) that there is legal support for the proposition that there is a six-year statute of limitations for the alleged claims. *See Sobolewski v. Boselli & Sons, Ltd. Liab. Co.*, 342 F. Supp. 3d 1178, 1189 (D. Colo. 2018) (finding six-year limitations period applies to similar claims). Plaintiff agreed to limit the Settlement Class to only include those individuals employed during the three years prior to the filing of the case to ensure that the class included employees for whom Defendant has contact information. This ensures that class members receive notice and ultimately receive a settlement payment. But Plaintiff and his counsel were also concerned with, for example, the hypothetical class member that worked for only one week during the class period and significant weeks prior to the class period. The distribution methodology in the Settlement addresses that concern by ensuring that class members receive a distribution that accounts for work weeks extending to six years prior to the anticipated entry of final judgment—*i.e.*, thirty-five days after the final approval hearing—and not just within the class period.

Finally, the operative complaint also includes individual discrimination claims by Plaintiff

12

against Defendant. The Parties and the mediator carefully segregated negotiations over the individual claims and the class claims to make sure that any recovery for the individual claims was not at the expense of the Settlement Class. Indeed, negotiations over the individual claims took place on a separate day only after the class negotiations had concluded. *See* Ex. 3, Dec. of Mediator Todd McNamara ¶ 11.

### 5. The Service Award to Plaintiff Should be Preliminarily Approved

The Parties jointly request that the Court preliminarily approve a service award of $30,000 to the Named Plaintiff. "[N]amed plaintiffs…are eligible for reasonable incentive payments" (or service awards) as part of a class action settlement. *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Plaintiff will submit a declaration supporting the proposed award as part of the final approval process.[2]

The $30,000 amount proposed by the parties is in line with incentive payments previously awarded in this District, including by this Court. *See Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (awarding $30,000 to a single class representative); *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671, Doc. 322 (D. Colo. July 20, 2020) (awarding $20,000 to each of the five class representatives). Moreover, in wage and hour class actions like this, an award of $30,000 is reasonable because of "the fear and risk of retaliation and

---

[2] Mr. Suaverdez will detail his efforts, including that he provided crucial information throughout the investigation, discovery, and settlement phases, and that he spent many hours of his time, even rearranging work and taking days off to participate in numerous meetings and phone calls related to the case and to attend settlement negotiations.

13

embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases." *Scovil v. FedEx Ground Package Sys., Inc.,* No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6–7 (D. Me. Mar. 14, 2014) *See also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 service award to a single class representative.); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving service awards of $25,000 to each named plaintiff in a wage and hour case); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500 to named plaintiffs in a wage and hour case) (citation omitted).

### 6. **Plaintiff is Represented by Competent and Experienced Counsel Who Believe This Settlement Is Fair and Reasonable**

Plaintiffs' Counsel is experienced in complex litigation and this area of the law. *See* Exs. 4-6. Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored preliminary approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89.

### IV. THE COURT SHOULD APPROVE THE SETTLEMENT ADMINISTRATOR AND THE NOTICE

#### 1. Proposed Settlement Administrator

The Parties have agreed to use JND Legal Administration ("JND") as settlement

14

administrator. *See generally* Ex. 7, JND Dec. JND has significant experience administering class action settlements and preliminarily estimates that it can administer this Settlement for $43,313. *Id.* ¶ 10. Any fees or expenses charged by JND against the settlement fund will be subject to court approval. Because of JND's significant experience with class settlements similar to this, the Parties request that JND be approved as the settlement administrator in this case.

### 2. Proposed Notice

Pursuant to Rule 23(e)(1), the Court must direct reasonable notice to all class members. Courts have broad discretion to approve the specific form and content of notice so long as the notice meets the requirements of constitutional due process. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1110-11 (10th Cir. 2001). These requirements are met if the notice is reasonably calculated to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

A Rule 23(e)(1) settlement notice must inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the final approval hearing. 4 Newberg on Class Actions § 11:53 (4th ed. 2002); *see also Lucken Family L.P., LLLP v. Ultra Res., Inc.*, 2010 WL 2650037, at *3–4 (D. Colo. June 30, 2010) (notice sufficient where it informed class members of the nature of the lawsuit, their right to opt out and object, the settlement terms, and the binding effect of the settlement on class members who do not opt out).

The proposed notice easily meets this standard. It accurately describes the litigation, summarizes the terms of the Settlement, informs class members of their rights with respect to the Settlement—including the right to be excluded from the Settlement or object to the Settlement—

15

and informs class members of the time and location of the fairness hearing. *See generally* Ex. 2, Notice. The proposed notice also informs class members of how their proposed monetary share of the Settlement is calculated and provides an estimate of what that monetary share will be. *Id.* at 1, 4 (highlighting the estimated amount on the first page and providing a detailed response to "What Will I Receive From The Settlement?" later in the notice). Within 21 days of an order granting preliminary approval, the notice will be mailed to the last known address of all members of the Settlement Class, and Defendant has confirmed that it has mailing addresses for all members of the Settlement Class. *See* Ex. 1, Settlement at ¶ IV.C.3-6.

Further, as the Court likely noted, the Parties have not included a claim form for approval because the Parties do not intend to utilize a "claims made" process. Rather, the Parties have agreed, subject to court approval, to distribute funds proportionally to all class members that do not opt-out of the settlement after final approval. *See* Ex. 1, Settlement at ¶ IV.E.1; In *re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable."). As a result, if the Settlement is approved, a class member that does nothing in response to the notice will receive a check with his or her proportional share of the settlement funds. *See* Ex. 2, Notice at 2 (informing members of the Settlement Class that "[b]y doing nothing, you will remain in the Settlement Class and you will receive a settlement payment.").

Finally, the Settlement Class will have a reasonable amount of time, forty-five days from the date the notice is mailed, to object to the Settlement or mail an opt-out request. Courts have routinely found a forty-five-day period to be reasonable and have even approved shorter periods. *See DeJulius*, 429 F.3d at 945-47 (32 days); *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2015 WL 392663, at *5 (D. Colo. June 25, 2015) (45 days).

16

## V. CONCLUSION

For the forgoing reasons, the Motion should be granted.

Respectfully submitted,

*s/ Larkin Reynolds*
Larkin Reynolds, Esq.
FOUNDRY LEGAL, LLC
3120 Blake Street, Suite A4
Denver, CO 80205
Ph: 303-335-0135
lreynolds@foundry.legal

*s/ Alexander Hood*
Alexander Hood, Esq.
HOOD LAW OFFICE, PLLC
358 Blue River Pkwy Suite E-90
Silverthorne, CO 80498
Ph: 720-381-4142
Alex@HoodLawPLLC.com

s/ *Brian D. Gonzales*
Brian D. Gonzales
THE LAW OFFICES OF BRIAN D. GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Telephone:  (970) 214-0562
BGonzales@ColoradoWageLaw.com

*Attorneys for the Plaintiff*

*s/ Jennifer S. Harpole*
Jennifer S. Harpole
Danielle Van Katwyk
LITTLER MENDELSON, P.C.
1900 16th Street, Suite 800
Denver, CO 80202
Phone: (303) 629-6200
Fax: (303) 629-0200
Email:  jharpole@littler.com
             dvankatwyk@littler.com

*Attorneys for Defendant*

**Certificate of Service**

I hereby certify that on April 22, 2021, I filed a true and correct copy of the forgoing using this Court's CM/ECF filing system, which served the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.

*s/Alexander Hood*
Alexander Hood