**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-01035-RMR-NYW

REYNALDO SUAVERDEZ, on behalf of
himself and all similarly situated persons

Plaintiff,

v.

CIRCLE K STORES INC.

Defendant.

---

**UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AGREEMENT AND FOR AWARD OF FEES AND
EXPENSES TO CLASS COUNSEL**

---

**<u>Certificate of Compliance with D.Colo.LCivR 7.1A</u>**

The Parties conferred prior to the filing of this Motion and this Motion is unopposed.

## I.    INTRODUCTION

Plaintiff Reynaldo Suaverdez (hereinafter, "Plaintiff"), pursuant to Federal Rule of Civil Procedure 23, requests final approval of the $3,500,000 class-wide settlement for claims under the Colorado Wage Claim Act ("CWCA"), C.R.S. §§ 8-4-101, *et seq.*, and the Colorado Minimum Wage Act, C.R.S. §§ 8-4-101, *et seq. See* Doc. 51-1 ("Settlement"). The Court preliminarily approved the Settlement and preliminarily certified a Rule 23 class for settlement purposes (the "Class"). *See* Doc. 69 (preliminary approval order). Notice was sent to the Class, and the Class responded with minimal opt-outs and objections. *See infra* at 3. For the reasons below, the Settlement should be finally approved pursuant to Fed. R. Civ. P. 23(e).

## II.    SUMMARY OF SETTLEMENT TERMS

The preliminary approval motion contained a lengthy summary of the settlement terms. *See* Doc. 51 at 2-3. Plaintiff now summarizes the Settlement terms relevant to final approval and distribution of the class funds.

Within 20 days of an order finally approving this settlement, the Settlement Administrator will provide a final list of Settlement Class Members agreed on by the parties that will receive payments under the settlement. *Id.* at ¶ IV.G.1. Defendant shall pay the settlement amount to the Settlement Administrator within 10 days of the Effective Date. [1] *Id.* at ¶ IV.E.8.a. The Settlement Administrator will mail checks to the Class within 30 days of the Effective Date. *Id.* at ¶ IV.G.2. Settlement checks that cannot be delivered or are not cashed will be distributed by the settlement administrator to existing class members on the same pro rata basis used to determine initial

---

[1] The Effective Date is the date appeal rights regarding the final approval are exhausted. *Id.* at ¶ IV. A.

payment amounts. *Id.* at ¶ IV.G.3. Any funds remaining from uncashed checks after the second

distribution will be distributed to Legal Aid Foundation of Colorado as *cy pres. Id.*

### III.    THE NOTICE PROCESS

Consistent with the preliminary approval order, Doc. 51, notice was timely sent to the Class

on November 9. 2021. *See* Ex. 1, Settlement Admin Dec. ¶ 8. 1,610 mailings were returned as

undeliverable. *Id.* ¶ 9. For those 1,610, 1,282 updated addresses were found. Notice was then sent

to the 1,282 updated addresses and 720 of these mailings to updated addresses were returned as

undeliverable. *Id.* ¶ 10. That leaves 12% of class members as unreachable. *Id.* This comports with

the Court's obligation to order "the best notice that is practicable under the circumstances" *See*

Fed. R. Civ. P. 23(c)(2)(B).

In response to the notice sent to over 6,000 class members, the Settlement Administrator

received three opt-outs, one clear objection, and two ambiguous responses.[2] *See id.* ¶ 12; Doc. 70

(Notice of Objection and Potential Objections). The deadline for opt-outs and objections was

December 24, 2021. *See id.* ¶ 11.

### IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

#### A.  **Settlement Approval Pursuant to Rule 23**

Rule 23(e)(2) requires judicial approval for class-wide settlements, which is subject to the

Court's sound discretion. *See United States v. Hardage,* 982 F.2d 1491, 1495 (10th Cir. 1993).

The law favors and encourages settlements, especially in complex actions. *See Amoco Prod. Co.*

*v. Fed. Power Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972); *Big O Tires, Inc. v. Bigfoot 4x4,*

---

[2] Class Counsel contacted the class members that submitted the ambiguous responses and, based
on those contacts, have made a proposal regarding how these responses should be treated. *See
generally* Doc. 70.

*Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001). Pursuant to Fed. R. Civ. P. 23(e)(2), a Court

may approve a class action settlement

> only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

## 1. Adequate Representation

Class Counsel are attorneys Larkin Reynolds, Brian Gonzales, and Alexander Hood. Doc.

69 ¶ 6 (preliminarily approving Class Counsel). As outlined in the preliminary approval motion,

Doc. 51 at 7-8, Class Counsel are all experienced litigators with extensive experience in complex

litigation, including experience in pursuing complex wage and hour class actions in Colorado and

nationwide. *See generally* Docs. 51-4, Reynolds Dec., 51-6, Gonzales Dec., 51-5, Hood Dec. Class

Counsel have applied this experience in spending significant time investigating, researching, and

developing the laws and facts of this case. *Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667

(D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given

to their favorable judgment as to the merits, fairness, and reasonableness of the settlement.").

## 2. The Relief Provided Is Adequate

In arriving at the Settlement, Plaintiff and Class Counsel considered all material factors,

including the "costs, risks, and delay of trial and appeal," as well as the ability to collect on a significant judgment. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). The Settlement strikes an appropriate balance between the strength of the Plaintiff's case and the benefit to the Class of securing a settlement now, rather than after a lengthy trial. This is supported by the fact that the settlement was reached at an arm's length before an experienced mediator. *See* Doc. 51-3, Dec. of Mediator Todd McNamara.

Here, Class Counsel also retained a PhD statistician to build a damages model for mediation from payroll records provided for mediation. *See* Doc. 51-5, Hood Dec. ¶¶ 13-14. According to that model, the $3.5 million recovery represents compensation to the Class for missing 90% of available 10-minute rest periods and 10% of missed 30-minute meal periods. *See id*. In preparation for court approval, the Settlement Administrator made class distribution calculations and reports the following estimates:

- The highest estimated individual settlement payment to a Settlement Class Member is $3,330.49.
- The average estimated individual settlement payment to be paid to Settlement Class Members is $342.26.
- The average recovery per workweek for Settlement Class Members is $7.97.
- The average number of workweeks worked by Settlement Class members during the Release Period is 43 workweeks.
- The average number of hours worked by Settlement Class members during the Release Period is 1504.43

*See* Ex. 1, Settlement Admin. Dec. ¶ 16.

This is eminently fair given the undeveloped nature of the law relating to missed meal periods under Colorado law. Defendant made clear that its legal position was that no damages were available for missed meal periods because the meal breaks were not "practicable" under the applicable Colorado regulation and employees were permitted to consume an on-duty meal.

Moreover, compensating for 90% of available 10-minute rest periods takes into account the practical reality that, at least occasionally, restroom or smoke breaks or a personal telephone call would last for 10 minutes or more. More generally, litigation risk—discovery, class certification, dispositive motions, and eventual trial on behalf of a class of over 6,000—made this significant recovery now outweigh the uncertainty of any future relief. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 130-31 (D. Colo. 2016) ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial.").

Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iii) and with this Court's approval, Class Counsel estimate the settlement amount will be fairly distributed as follows:

| Settlement Amount | $3,500,000.00 | *See* Doc. 51-1. |
|---|---|---|
| Attorney's Fees and Expenses | $1,179,977.89 | Class Counsel is requesting $1,166,666.67 (1/3 of the class fund) in fees and $13,311.22 in expenses. *See infra* at 8-15. |
| Settlement Administrator Costs | $60,000.00 | *See* Ex. 1, Settlement Admin. Dec. ¶ 17 (estimating a maximum of $60,000 for administration) |
| Service Award to Class Representative | $30,000.00 | *See infra* at 7-8 (establishing $30,000 as a reasonable service award). |
| ***Funds for Disbursal to Class*** | $ 2,230,022.11 | |

### 3. The Settlement Is Equitable Among Class Members

The Settlement requires the settlement fund be distributed to the class on a "pro rata basis based on the total amount of workweeks, average hours worked per week, and average hourly rate of pay within the Release Period." Doc. 51-1, Settlement ¶ IV.E.7.a. This ensures that each class member receives a share of the settlement fund proportional to his or her work for Defendant and, thus, proportional to opportunities for missed rest and meal periods while working for Defendant. *See* Doc. 51 at 11-12 (preliminary approval motion describing compromised reached with respect to class period and release period).

Finally, while the operative complaint also includes individual discrimination claims by Plaintiff against Defendant, the Parties and the mediator carefully segregated negotiations over the individual claims and the class claims to make sure that any recovery for the individual claims was not at the expense of the Class. Indeed, negotiations over the individual claims took place on a separate day only after the class negotiations had concluded. *See* Doc. 51-3, Dec. of Mediator Todd McNamara ¶ 11.

**B.  <u>The Named Plaintiff Should Receive a Service Award</u>**

The Court should grant Mr. Suaverdez, the Lead Plaintiff, a service award of $30,000 to account for "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiff submits a declaration showing his exceptional efforts, in both service and sacrifice, in bringing this case on behalf of the Class. *See generally* Ex. 2, Suaverdez Dec. His contributions to the factual development of the claims and to the analysis of data for settlement were invaluable, and, moreover, brave—particularly considering the risks of stigma, stress, the isolation, and hardships associated with stepping forward having one's name added as a lone representative plaintiff in a suit against a current employer in an employment class action. Specifically, Plaintiff persevered in the lawsuit despite "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases." *See Scovil v. FedEx Ground Package Sys., Inc.,* 2014 WL 1057079,

at *6–7. Moreover, given his current unemployment, ill-health, and age, Plaintiff's future employment prospects are stark. *See* Ex. 2, Suaverdez Dec. ¶ 18.

The precedent in this District combined with Plaintiff's sacrifices—which he shouldered alone—in bringing this case make the proposed $30,000 service award reasonable. *See Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804-PAB-NRN, Doc. 149 (D. Colo. Oct. 28, 2020) (Magistrate Judge Neureiter awarding a $30,000.00 service award to single named plaintiff in $990,000.00 wage and hour class action settlement); *Valverde v. Xclusive Staffing, Inc.,* 1:16-cv-00671-RM-NRN*,* Doc. 322 at 12 (D. Colo. July 20, 2020) (Judge Moore awarding $20,000 service awards to each of six named Plaintiffs in a $1,520,000.00 settlement for unpaid wages); *Blanco v. Xtreme Drilling and Coil Services, Inc.,* 1:16-cv-00249-PAB-SKC, Doc. 61 at 16 (D. Colo. July 17, 2020) (Judge Brimmer awarding $24,000 service award to single named Plaintiff in $850,000 settlement for unpaid wages); *see also Gradie v. C.R. Eng., Inc.*, No. 2:16-cv-00768-DN, 2020 U.S. Dist. LEXIS 218287, at *47 (D. Utah Nov. 20, 2020) (awarding four named plaintiffs a total of $48,000 for their "contributions to the [lawsuit], the risks they undertook to represent the Class, and for their execution of general releases").

## V.     THE COURT SHOULD AWARD FEES AND EXPENSES TO CLASS COUNSEL

Class Counsel also move for attorney's fees of $1,166,666.67 and expenses of $13,311.22, for a total of $1,179,977.89, from the common fund pursuant to Fed. R. Civ. P. 23(h). The Class has been notified of this request and no Class member has objected to the fee request, *see* Ex. 1, Settlement Admin. Dec. at Exhibit A (notice as mailed informing class members of fee request); Doc. 70 (attaching and describing objection).

### A. Legal Standard

The Tenth Circuit has expressed "a preference for the percentage of the fund method." *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). Under the percentage of the fund method, the fee award is based on a percentage of the total economic benefit obtained for the class. *See, e.g., Anderson v. Merit Energy Co.,* No. 07–cv–00916–LTB–BNB, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) (citing *Brown v. Phillip Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.1988)). In awarding these fees, the Court's discretion is guided by the "*Johnson* factors." *Gottlieb*, 43 F.3d at 482 n.4 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)). Not all of the *Johnson* factors are equal. Further, "rarely are all of the *Johnson* factors applicable," *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (quoting *Brown*, 838 F.2d at 45), so "not all of them need [to] be considered" in every case, *Gudenkauf v. Stauffer Communications, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). The "most critical factor . . . is the degree of success obtained." *Farrar v. Hobby,* 506 U.S. 103, 114 (1992) (quotations omitted).

### B. Application of the *Johnson* Factors

#### 1. Time and Labor Required

"[T]he complexity of the legal issues involved . . . justifies the time spent" by Class Counsel. *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *2 (D. Colo. Sept. 18, 2014). As this Court knows, this case has been intensively litigated for over a year. Class Counsel expects to log at least 792 hours on this case. *See infra* at 14. Settlement is the result of over a year of litigation, which included significant formal and informal discovery and a full-

day mediation before an experienced mediator. *See generally* Doc. 51-3, Dec. of Mediator Todd McNamara.

### 2. The Requisite Skill to Perform the Legal Service Properly and the Novelty and Difficulty of the Questions Presented

Class counsel are experienced litigators. *See supra* at 4 (explaining adequacy of representation). This case raised numerous legal issues. *See generally,* Doc. 42, Operative Complaint. And some of these issues were novel issues of first impression in Colorado. *See supra* at 5-6 (describing novel meal break claim). Moreover, the legal issues litigated in this case "are governed by highly technical state and federal wage statutes and regulations." *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. April 25, 2015).

### 3. Preclusion of Other Employment and Time Limitations

"There is an inherent preclusion of other work in litigating a complex case . . . on a contingency fee basis." *Id.* It is just "common sense" that billing the significant hours required by this matter forced the attorneys to forgo other work. *In re Crocs*, 2014 WL 4670886, at *3 ("Although Plaintiffs' Counsel does not provide specific examples of work they were forced to decline during the pendency of this action, common sense indicates that the nearly 3900 hours spent litigating this case came at the expense of time that could have been devoted to other matters.").

### 4. The Customary Fee for Similar Work and Attorney's Fees Awarded in Similar Cases

Class Counsel's requested fees of 33% of the common fund is in line with the customary fee awarded to class counsel in a common fund settlement in this Circuit. "The customary fee … is approximately one third of the total economic benefit bestowed on the class." *Lucken Family*

*Ltd. Partnership, LLLP v. Ultra Res., Inc.*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010); *see also Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000). There have been larger awards in the Circuit. *See, e.g., Davis v. Crilly,* 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (approving 37% in fees and expenses which was "well within the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) (awarding 39% of settlement fund for attorneys' fees); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, Nos. civ 89–822–T & 1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Chieftain Royalty Co. v. Laredo Petroleum, Inc*., No. civ-12-1319-D, 2015 WL 2254606, at *3 (W.D. Okla. May 13, 2015) ("An award of forty percent (40%) of the settlement value is well within the range of acceptable fee awards in common fund cases"), vacated on other grounds, 888 F.3d 455 (10th Cir. 2017).

**5. The Contingency Nature of Class Counsel's Representation and the "Undesirability" of the Case**

Plaintiffs' counsel took this case on a contingency basis and advanced all expenses in the litigation. *See* Ex. 3, Reynolds Dec. ¶ 14. Substantial fee awards are appropriate in cases such as this, where class counsel must "advance large amounts of time, money, and other resources to determine if any recovery might be had"—something "[m]ost attorneys" cannot do. *Shaw*, 2015 WL 1867861, at *7; *see also In re Thornburg Mortg. Inc. Sec. Litig.,* 912 F.Supp.2d 1178, 1256 (D.N.M. 2012) ("[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices" (alteration in original, quotations omitted)). Accordingly, "[a] contingent fee, and the potential for a relatively high fee, is designed to reward counsel for taking the risk of

prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful." *In re Qwest,* 625 F. Supp. 2d at 1151.

Absent possibility and precedent for such an award, there is a risk that cases like this one, with transient plaintiffs who work in low-wage positions, would never see the inside of a court room. *See Shaw*, 2015 WL 1867861, at *7 ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation . . . and transfer a significant portion of the risk of loss to the attorneys taking a case . . . . Access to the courts would be difficult to achieve without compensating attorneys for that risk." (citations and quotations omitted)).

**6.  Potential Damages Involved and the Results Obtained**

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar,* 506 U.S. at 114 (quotations omitted); *see also Brown,* 838 F.2d at 456 ("[T]he amount involved and the results obtained . . . may be given greater weight when . . . the recovery was highly contingent and . . . the efforts of counsel were instrumental in realizing recovery on behalf of the class."). As discussed above, the recovery for each class member is significant given the nature of the claims. *See supra* at 4-6. This is particularly true given the uncertainty of continued litigation. *Id.*

**7.  The Experience, Reputation and Abilities of Class Counsel**

All Class Counsel have significant litigation experience, including experience in complex wage and hour class actions like this one. *See supra* at 4 (explaining adequacy of representation); *See also generally* Exs. 3-5 (Class Counsel declarations describing experience).

### 8. Nature and Length of the Professional Relationship with the Client

Courts recognize that representing a plaintiff class means that attorneys may be forgoing repeat business. Thus, substantial awards are justified when, as with the Class in this case, "the likelihood that many class members will be seeking additional representation from Class Counsel is slim." *Shaw*, 2015 WL 1867861, at *7. This is particularly true because "wage claims . . . do not lend themselves to continuous, long-term attorney-client relationships." *Id.*

Class Counsel entered into a contingency agreement with the named Plaintiff. *See* Ex. 3, Reynolds Dec. ¶ 14; *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1114 (D. Kan. 2018) ("counsel have indicated that many plaintiffs in this case agreed to contingent-fee arrangements that allowed for fees of at least 40 percent of any recovery"). As for the Class, despite being notified of the fee request, no potential class member submitted a comment or objection complaining about the fee award. *See* Ex. 1, Settlement Admin. Dec. at Exhibit A (notice as mailed informing class members of fee request); Doc. 70 (attaching and describing objection).

### C. Plaintiffs' Expenses Are Reasonable and Were Necessarily Incurred in the Prosecution of This Action

Class Counsel seek reimbursement for the $13,311.22 in total costs and nontaxable expenses in prosecuting this action. *See* Ex. 3, Reynolds Dec. ¶ 14; Ex. 4, Gonzales Dec. ¶ 8. Such expenses "are awarded in addition to the attorney fee percentage." *Vaszlavik*, 2000 WL 1268824, at *4; *see also Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015) (awarding expenses in addition to attorneys' fees). The requested expenses here are modest and necessary, consisting largely of filing fees, expert fees, and mediation fees. All of these expenses would be invoiced for hourly clients. The requested expenses

are therefore reasonable and therefore appropriately paid in addition to the fees. *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).

**D.  A Lodestar Crosscheck Also Demonstrates that Class Counsel's Request Is Reasonable**

"Courts using the percentage method will often crosscheck the requested award with the lodestar amount." *Shaw*, 2015 WL 1867861, at *8. However, the Court in the exercise of its discretion and in light of the facts of the case may choose to rely entirely on the percentage method. *See Uselton*, 9 F.3d at 853 (distinguishing common fund cases where the percentage method is permissible rather than the lodestar method and approving fee award without considering the lodestar); *see also CompSource Oklahoma v. BNY Mellon, N.A.*, No. civ 08-469-KEW, 2012 WL 6864701, at *8 (E.D. Okla. Oct. 25, 2012) ("A majority of circuits recognize that trial courts have the discretion to award fees based solely on a percentage of the fund approach and are not required to conduct a lodestar analysis in common fund class actions.").

Class Counsel's requested fee award in this action is equal to the lodestar with a 2.51 multiplier. This is in the range of normal; Courts in this district award multipliers between 2.5 and 4.6. *Mishkin v. Zynex, Inc.,* No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6).

*a)      Class Counsel's Hours and Rates Are Reasonable*

Class Counsel expect to log at least 792 attorney hours at the following hourly rates:

| Attorney Name | Hours Worked | Hourly Rate |
|---|---|---|
| Larkin Reynolds | 400 | $550.00 |
| Brian Gonzales | 230 | $675.00 |
| Alexander Hood | 162 | $550.00 |

*See* Ex. 3, Reynolds Dec. ¶ 13; Ex. 4, Gonzales Dec. ¶ 8; Ex. 5, Hood Dec. ¶ 9. Given the length and complexity of this litigation, the hours spent were reasonable. Moreover, the hourly rates are also reasonable given the education and experience of Class Counsel. *See* Ex. 3, Reynolds Dec. ¶¶ 1-3; Ex. 4, Gonzales Dec. ¶¶ 3-7; Ex. 5, Hood Dec. ¶¶ 2-8; *Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (approving class action fee request where attorneys Hood and Gonzales were class counsel and submitted hourly rates of $550 per hour and $625 per hour respectively); *Valverde v. Xclusive Staffing, Inc.,* 1:16-cv-00671, Doc. 322 (D. Colo. July 20, 2020) (approving class action fee request where attorney Hood was class counsel and submitted an hourly rate of $450 per hour); *Beltran v. Interexchange*, 14-cv-03074, Doc. 1230 (D. Colo. July 18, 2019) (same); *Magouirk v. Spanish Trails, Inc.,* NO. 18-cv-01669-PAB-KLM, 2020 WL 2512831, *2 (D. Colo May 15, 2020) (recognizing reasonable hourly rates between $150 and $675 for attorneys and staff members involved in litigation and citing *Shaw*, 2015 WL 1867861, at *8).

*b)    The Multiplier is Reasonable*

Class Counsel's estimated lodestar is $464,350.00. *Supra* at 14. The total fee request of $1,166,666.67 compared to the lodestar creates a lodestar multiplier of 2.51, which is well within the range of multipliers typically awarded by courts in this Circuit. *See In re Crocs*, 2014 WL 4670886, at *6; *see also Mishkin,* 2012 WL 4069295, at *2 (collecting District of Colorado cases approving multipliers ranging from 2.5 to 4.6).

## VI.    CONCLUSION

For the forgoing reasons, the Motion should be granted.

15

Respectfully submitted,

_s/Larkin Reynolds_
Larkin Reynolds, Esq.
FOUNDRY LEGAL, LLC
1880 Little Raven Street, Suite 116
Denver, CO 80202
Ph: 303-335-0135
lreynolds@foundry.legal

_s/Alexander Hood_
Alexander Hood, Esq.
HOOD LAW OFFICE, PLLC
358 Blue River Pkwy Suite E-90
Silverthorne, CO 80498
Ph: 720-381-4142
Alex@HoodLawPLLC.com

_Attorneys for Plaintiffs_

s/_Brian D. Gonzales_
Brian D. Gonzales, Esq
THE LAW OFFICES OF BRIAN D.
GONZALES, PLLC
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Telephone: (970) 214-0562
BGonzales@ColoradoWageLaw.com

**Certificate of Service**

I hereby certify that on February 4, 2022, I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5.


_s/Alexander Hood_
Alexander Hood